UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| VIRGINIA O'BOY, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:04-CV-441-PS |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is State Farm Automobile Mutual Insurance Company's motion for partial summary judgment. [DE 14] Plaintiff Virginia O'Boy filed this diversity action against her insurer State Farm after it allegedly underpaid her claim stemming from a car accident with an underinsured motorist. Plaintiff alleges that State Farm breached not only the insurance contract but also its duty of good faith and fair dealing under Indiana law. Plaintiff also asserts a claim for punitive damages against State Farm. State Farm has moved for summary judgment on Plaintiff's bad faith claim and her claim for punitive damages. Plaintiff has not responded. For the reasons that follow, State Farm's Motion for Partial Summary Judgment is granted.

**BACKGROUND**

A.  **The Accident**

On March 6, 2003, Plaintiff Virginia O'Boy was injured in a two-car accident on Calumet Avenue in Hammond, Indiana. Plaintiff was a front-seat passenger in a car driven by Edward T.

O'Boy. Delores R. Rude was the driver of the other car. The police report indicated that Delores Rude was at fault by failing to yield the right of way to the O'Boys.

### B. Plaintiff's Medical History

Plaintiff was 78 years old at the time of the accident. Before the accident, Plaintiff had an extensive history of injuries and medical treatment. The history is summarized as follows. Plaintiff suffered a back injury in 1954 and phlebitis (inflammation of a vein) in 1974. In 1992, she fractured two ribs and had a varicose vein stripped from her right leg. In 1993, a doctor excised an infected vein from Plaintiff's right leg. In December, 1998, Plaintiff was diagnosed with osteoporosis and degenerative arthritis. In January, 2000, Plaintiff began to complain of leg cramps. On February 7, 2000, she was treated for left ankle edema, peripheral vascular disease, and bilateral claudication (pain in the legs due to inadequate blood circulation). In March, 2000, Plaintiff had an angioplasty. Two months later, stress tests revealed that Plaintiff had been experiencing exercise-induced chest pain. Plaintiff's medical records during this time also contain complaints of leg, neck, and back pain, and problems caused by osteoporosis (the weakening of bones). In July, 2002, Plaintiff's medical records indicate a possible asymptomatic mild hernia and a bone scan of her legs and spine. In addition, Plaintiff complained of abdominal and neck pain in February, 2003, just before the car accident with Delores Rude.

### C. Post-Accident Medical Treatment

Shortly after the March 6, 2003 accident, Plaintiff was taken to the emergency room at St. Margaret Mercy Hospital where she complained of multiple abrasions and pain in her left breast, upper abdomen, left leg and lower back. Plaintiff was diagnosed with chest pain and acute coronary syndrome. X-rays of Plaintiff's lumbar spine revealed a moderate compression of

the "L1 disc" and a mild, possibly pre-existing compression of the "L4 disc." Plaintiff denied any head injury or neck pain. Plaintiff was released from the hospital on March 8, 2003.

After her release from the hospital, Plaintiff continued to complain of low back and leg pain. She was given a brace after a series of diagnostic tests. When this brace failed to relieve all of her symptoms, Plaintiff underwent a kyphoplasty (a procedure designed to expand collapsed vertebrae) on August 5, 2003. This procedure appeared to resolve most of Plaintiff's accident-related symptoms as Plaintiff reported a pain reduction of at least 90%.

Several months later, in June 2004, State Farm received notice that Plaintiff was to receive an MRI of her spine and related medical treatment. On July 10, 2004, State Farm received the bills for these services and requested additional records so it could determine whether the treatment was related to the car accident. On July 29, 2004, State Farm received Plaintiff's medical records and determined that the MRI and related treatment were based on a diagnosis of a "closed dorsal and lumbar fracture" which, in State Farm's view, did not appear to be related to the injuries Plaintiff suffered as a result of the car accident.

### D. The Insurance Policy

At the time of the accident Plaintiff was the named insured in an insurance policy issued by State Farm. Under the policy, Plaintiff was entitled to up to $100,000 in underinsured benefits per person, per accident, to compensate her in the event she was injured by an underinsured driver. The policy provided that the $100,000 limit was to be reduced by any amount paid by the underinsured driver's insurance carrier.

### E. State Farm's Payments on Plaintiff's Claim

As of January, 7, 2004, State Farm had paid Plaintiff $43,684.35 in accordance with this policy. These payments encompassed virtually all medical treatment Plaintiff received after the accident, including payment of $18,330.38 for the kyphoplasty procedure. Ms. Rude's insurance carrier also provided Plaintiff a $25,000 payment, the limits of Ms. Rude's policy. In March, 2004, State Farm determined that the remaining value of Plaintiff's underinsured driver/personal injury claim was somewhere between $12,525 and $18,825. On March 19, 2004, State Farm offered to pay Plaintiff the lower end of this range. Plaintiff rejected the offer. When it became apparent that the parties had reached an impasse, State Farm provided Plaintiff a payment of $12,525 and advised her that accepting this payment would not prejudice her right to seek a higher amount.

In a letter dated April 29, 2004, Plaintiff's counsel noted that Plaintiff had received $25,000 from Ms. Rude's insurance carrier; $43,732.35 in medical payments from State Farm; and the $12,525 claim valuation payment from State Farm; for a total of $81,257.35. Plaintiff's counsel made a demand for further payment of $18,742.65, the limit of Plaintiff's underinsured driver benefits. State Farm rejected the demand. State Farm determined that the MRI and other medical treatment Plaintiff received in June and July of 2004 were unrelated to the accident and refused to pay anything more on Plaintiff's claim.

### F. Procedural History

On October 1, 2004, Plaintiff filed suit in Indiana state court. [DE 1] Plaintiff alleges in her complaint that she is entitled to $75,000 from State Farm. In the *ad damnun* clause, Plaintiff

demands that she is entitled to "an amount which would reasonable compensate for her damages; for punitive damages; and for all other appropriate relief." *Id*.

On October 21, 2004, State Farm removed the case to federal court. [DE 2] On January 17, 2006, State Farm moved for partial summary judgment on two of Plaintiff's claims: 1) her claim for breach of the duty of good faith and fair dealing; and 2) her claim for punitive damages. State Farm's motion contained the requisite certificate reflecting service of the motion upon Plaintiff. Under Local Rule 56.1, Plaintiff had thirty (30) days from the date of service to file her response. To date, Plaintiff has not filed a response.

## DISCUSSION

A.  **Subject Matter Jurisdiction**

Before the Court addresses whether summary judgment is appropriate, it must take a detour and make sure it has jurisdiction over the case. State Farm removed the case based on diversity jurisdiction. Plaintiff did not seek to remand the case or otherwise dispute jurisdiction. Nevertheless, jurisdiction cannot arise from the parties' consent or agreement. A federal court has an independent obligation to make sure that federal subject matter jurisdiction exists even where the parties agree it exists or fail to contest the issue. *See Andrews v. E.I. duPont de Nemours and Co.*, 447 F.3d. 510, 513 (7th Cir. 2006); *Smith v. Am. Gen. Life and Acc. Ins. Co., Inc.*, 337 F.3d 888, 892 (7th Cir. 2003).

Diversity jurisdiction is present when the parties are completely diverse and the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Complete diversity is not a worry here because Plaintiff is a citizen of Indiana and

5

State Farm is an Illinois corporation with its principal place of business in Illinois. Whether the $75,000 amount-in-controversy requirement is satisfied is less obvious.

If material jurisdictional allegations are contested, the proponent of federal jurisdiction must prove those jurisdictional facts by a preponderance of the evidence. *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). If, as here, the jurisdictional allegations are not contested, then "the standard of proof is irrelevant." *Id*. The case remains in federal court "unless it is legally certain that the controversy is worth less than the jurisdictional minimum." *Meridian*, 441 F.3d at 543. A removing party "need not show that the plaintiff will *prevail* or collect more than $75,000 if he does." *Rising-Moore v. Red Roof Inns, Inc*., 435 F.3d 813, 816 (7th Cir. 2006). Rather, the burden is to show "what the plaintiff hopes to get out of the litigation; if this exceeds the jurisdictional amount, then the case proceeds in federal court unless a rule of law will keep the award under the threshold." *Id*.

In removed cases such as this one, "the amount alleged in the plaintiff's complaint, if sufficient to meet the jurisdictional requirements of §1332, is presumed correct on the assumption that a plaintiff would not fabricate the amount in controversy to meet the federal diversity jurisdiction requirements and then file her suit in state court relying on the defendant to remove the case to federal court." *Smith*, 337 F.3d. at 892. Here, Plaintiff's complaint does not specify a number in the *ad damnum* clause. [DE 1] This is no surprise because Indiana Trial Rule 8(a)(2) prohibits such clauses. However, Plaintiff makes several allegations elsewhere in the complaint regarding the amount in controversy. For instance, Plaintiff alleges that her insurance policy with State Farm had a $100,000 limit on underinsured motorist claims, that her damages greatly exceeded the $100,000 limit, that she received $25,000 from Delores Rude's

6

carrier, that she is entitled to $75,000 from State Farm, that she made a demand to State Farm for $75,000 in satisfaction of her damages, that State Farm breached its duty of good faith and fair dealing by delaying payment on her claim, and that she is entitled to punitive damages. *Id*.

Fairly read, Plaintiff's complaint demands more than $75,000 in damages. However, to the extent that punitive damages are required to satisfy the requisite amount-in-controversy, a two-part inquiry is necessary. *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000). First, the court must determine whether punitive damages are recoverable under state law. *Id*. That is plainly the case here based on Plaintiff's bad faith claim. *See Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). If the answer is yes, the court then has subject matter jurisdiction "unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." *Del Vecchio*, 230 F.3d at 978 (citation omitted). In other words, only if it were "legally impossible" for Plaintiff to recover more than $75,000 would her suit fail for want of jurisdiction. *Geschke v. Air Force Ass'n*, 425 F.3d 337, 341 (7th Cir. 2005); *Smith*, 337 F.3d at 894.

The amount in controversy is determined at the time of removal. *See Andrews*, 447 F.3d at 513; *Geschke*, 425 F.3d at 341. This court cannot say that, at the time of removal, it was legally impossible for Plaintiff to recover more than $75,000 against State Farm. Under Indiana law, an insured may recover damages in excess of the policy limits if the insurer denies a claim in bad faith. *See Allstate Ins. Co. v. Hammond*, 759 N.E.2d 1162, 1167 (Ind. App. 2001) (insured could not collect uninsured motorist benefits from his insurer in excess of policy limits absent claim of bad-faith). Plaintiff alleged in her complaint that her damages greatly exceeded the $100,000 limit. Furthermore, if Plaintiff were to prevail on her bad-faith claim, she would be

7

able to recover the panoply of tort damages associated with the denial of her claim and not just the damages stemming from the car accident. *See Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993) (in bad-faith tort claims, "all damages directly traceable to the wrong and arising without an intervening agency are recoverable"); *Patel v. United Fire & Cas. Co.*, 80 F. Supp.2d 948, 958 (N.D. Ind. 2000) (the Indiana Supreme Court, if presented with the issue, "would hold that an insured injured by the bad faith conduct of an insurer . . . is entitled to recover damages based upon traditional tort principles of compensation for resultant injuries actually suffered, including emotional distress").

One final observation is warranted. Before Plaintiff filed suit, her lawyer acknowledged in writing that Plaintiff had received $81,257.35 in payments from insurance carriers ($25,000 from Rude's carrier and $56,257.35 from State Farm). [DE 16 at 16] Plaintiff demanded from State Farm an additional $18,742.65, which is the difference between her policy limit ($100,000) and the amount she had received at that time ($81,257.35). *Id*. State Farm refused and Plaintiff filed suit. Conceivably, one could argue that if $18,742.65 represented the entire amount of compensatory damages available to Plaintiff, diversity jurisdiction would be lacking despite Plaintiff's claim for punitive damages. After all, Indiana law limits punitive damages to the greater of $50,000 or three times the amount of compensatory damages (in this scenario, $56,227.95). *See* Ind. Code 34-51-3-4. Thus, the maximum amount Plaintiff would be able to recover based on these assumptions would be $74,970.60 [$18,742.65 in compensatory damages + $56,227.95 in punitive damages].

Such an argument is flawed though because it construes Plaintiff's damages too narrowly. As stated earlier, under Indiana law, an insurer who denies a claim in bad faith loses

8

the protection of the policy limit and is liable for any award of damages regardless of the policy limit. *See Allstate Insurance Company v. Hammond*, 759 N.E.2d 1162, 1167 (Ind. App. 2001). Moreover, this court agrees with *Patel* which concluded that traditional tort injuries, such as emotional distress, are available to plaintiffs who prevail on bad faith claims under Indiana law. *See Patel*, 80 F. Supp.2d at 958. This court cannot say with legal certainty that Plaintiff's damages, or what Plaintiff "hoped to get out of the litigation," was less than or equal to $75,000 at the time of removal.

Of course, granting summary judgment for State Farm on Plaintiff's bad faith and punitive damages claims will not affect this court's jurisdiction. Post-filing events do not terminate jurisdiction that was proper at the outset. *See, e.g., Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir. 1998) (district court's grant of summary judgment on one of plaintiff's claim in diversity action did not destroy jurisdiction even though the amount in controversy for the remaining claims did not surpass jurisdictional threshold). Comfortable that it has jurisdiction over the case, the court now addresses the merits of State Farm's summary judgment motion.

**B.    Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment may be sought "as to all or any part of" the claim at issue. *Id*. A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323-24 (1986). The Court must draw every reasonable inference from the record in the light most favorable to the non-moving party. *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 497 (7th Cir. 1999).

Local Rule 56.1 sets forth specific requirements for both the party moving for summary judgment and the non-moving party. In this district, the moving party must file a "Statement of Material Facts" as to which "the moving party contends there is no genuine issue." L.R. 56.1(a). The non-moving party must respond with a "Statement of Genuine Issues" setting forth "all material facts as to which it is contended there exists a genuine issue necessary to be litigated." *Id*. The Court is to "assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the [non-moving party's] 'Statement of Genuine Issues.'" L.R. 56.1(b).

Here, Plaintiff has not responded to State Farm's motion for summary judgment or disputed any of the facts set forth therein. Thus, the facts set forth in State Farm's Statement of Material Facts are deemed admitted unless they are unsupported by the evidence or contradict each other. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[w]e have consistently held that a failure to respond by the nonmovant as mandated by local rules results in an admission"). However, even where an opposing party fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only "if appropriate - that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *P.S. Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (quotation omitted).

### C. Duty of Good Faith and Fair Dealing

Indiana law imposes a duty of good faith and fair dealing in all insurance contracts. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002) (*citing Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993)). This duty requires the insurer to refrain from: "(1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in payment; (3) deceiving the insured; and (4) exercising an unfair advantage to pressure an insured into settlement of his claim." *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmer's Mutual Ins. Co.*, 779 N.E.2d 21, 26 (Ind. Ct. App. 2002). A breach of the duty of good faith and fair dealing gives rise to an independent cause of action in tort. *Id*.

That said, a cause of action does not arise every time an insurance claim is denied. *Freidline*, 774 N.E.2d at 40. A good faith dispute over the validity or amount of a claim is not sufficient to establish a breach of the duty of good faith and fair dealing. *Id*. Rather, a breach of the duty occurs when an insurer denies liability while knowing that there is no rational, principled basis for doing so. *Id*. Thus, to prove bad faith, "the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability." *Id*.; *see also Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 523 (Ind. 1993) (finding no breach of duty in dispute regarding underinsured driver coverage when insurer refused to pay claim on grounds that insured was more than 50% at fault even though jury ultimately found in favor of insured); *Masonic Temple Ass'n*, 779 N.E.2d at 29-30 (finding no breach where insurer's denial of claim rested on rational basis); *Johnston v. State Farm Mutual Automobile Ins. Co.*, 667 N.E.2d 802, 806 (Ind. Ct. App. 1996) (finding no breach in dispute over value of insured's underinsured motorist claim where evidence regarding the value of

11

insured's personal injuries did not clearly demonstrate that insured's damages were equal to or in excess of the policy limit).

Here, Plaintiff has designated no evidence to support her claim that State Farm acted in bad faith in evaluating Plaintiff's underinsured motorist claim as it has in this case. Rather, the undisputed facts set forth by State Farm indicate that State Farm has paid virtually all of Plaintiff's medical expenses arising from the accident. State Farm estimated the value of Plaintiff's remaining damages, including the value of her pain and suffering, to be somewhere between $12,525 and $18,825. State Farm offered to pay Plaintiff the low end of this range. Plaintiff rejected the offer. State Farm then paid Plaintiff the lower of the two amounts and promised that by accepting the amount Plaintiff would not surrender her right to pursue additional money. Plaintiff disagreed with State Farm's valuation and demanded payment of an additional $18,742.65, the difference between her underinsured coverage limit ($100,000) and what she had received from State Farm and Delores Rude's insurance company.

Given Plaintiff's extensive pre-existing history of injuries and the absence of evidence clearly linking the unpaid medical expenses to the March 6, 2003 car accident, State Farm had at least a rational basis for evaluating Plaintiff's claim as it did. The pain that Plaintiff suffered while she was recuperating from the accident was symptomatic of Plaintiff's pre-existing medical conditions, including osteoporosis and vascular disease. Plaintiff presents no evidence to suggest that State Farm's valuation of her claim was irrational or not made in good faith. At worst, this case is the result of a good faith dispute over the value of Plaintiff's underinsured motorist claim. Accordingly, State Farm is entitled to summary judgment on Plaintiff's bad-faith claim. *See Backwater, Inc. v. Penn-American Ins. Co.*, --- F.3d ----, 2006 WL 1409427 (7th Cir.

May 24, 2006) (affirming summary judgment to insurer on plaintiff's bad faith claim where conflicting inferences could be drawn about the source of the damage claimed).

D.  **Punitive Damages Claim**

Indiana law does not allow punitive damages for claims based solely on breach of contract. *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998); *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 981 (Ind.1993). Further, while a breach of the duty of good faith and fair dealing may be grounds for a punitive damages award, the award of punitive damages is not automatic. *Hickman*, 622 N.E.2d at 520. To recover punitive damages, the plaintiff must demonstrate, with clear and convincing evidence, that the defendant acted with "malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing. . . ." *Id.*, quoting *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137-38 (Ind. 1988). The issue of whether punitive damages are appropriate may be resolved in a summary judgment motion. *Masonic Temple Ass'n*, 779 N.E.2d at 27.

The court has found that State Farm is entitled to summary judgment on Plaintiff's bad faith claim. Thus, all that remains in Plaintiff's breach of contract claim. Because punitive damages are not available for a stand-alone breach of contract claim, State Farm is entitled to summary judgment on Plaintiff's claim for punitive damages. *See Hemenway*, 159 F.3d at 261. Even if State Farm's actions did amount to a breach of the duty of good faith and fair dealing, Plaintiff still has not created a genuine issue of fact as to whether she would be entitled to punitive damages. Beyond the base allegations contained in her complaint, Plaintiff has not made any showing that State Farm acted with any "malice, fraud, gross negligence or

13

oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Hickman*, 622 N.E.2d at 520.

## CONCLUSION

Based on the foregoing, Defendant State Farm's Motion for Partial Summary Judgment [DE 14] is **GRANTED.**

**SO ORDERED.**

ENTERED: June 13, 2006

                                           s/ Philip P. Simon
                                           PHILIP P. SIMON, JUDGE
                                           UNITED STATES DISTRICT COURT